**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| UNITED RENTALS, INC., | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | |
| JAMES KOLLAR, | ) | |
| | ) | |
| Defendant. | ) | March 1, 2010 |
| | ) | |

## <u>COMPLAINT</u>

Plaintiff, United Rentals, Inc. and its affiliates (collectively "United" or "Plaintiff"), by and through United's undersigned attorneys, and for its Complaint for injunctive and other relief against defendant, James Kollar ("Kollar" or "Defendant"), hereby state and allege the following:

**<u>Nature of Action</u>**

1.      This action is based on the willful breach of confidentiality clauses and restrictive covenants contained in a confidentiality and non-competition agreement, and sets forth claims for breach of contract, violation of the Uniform Trade Secrets Act, and tortious interference with economic advantage and existing business relationships.

**<u>Parties, Jurisdiction and Venue</u>**

2.      United is a Delaware corporation with their principal places of business in Greenwich, Connecticut.  United is engaged in the business of, among other things, selling and renting certain equipment/merchandise including construction equipment, aerial equipment, landscaping equipment, home repair and maintenance equipment, and contractor supplies throughout the United States, including Texas.  At all relevant

times hereto, United operated branches in, among other places, San Antonio, Austin, and Round Rock, Texas (collectively, the "Texas Branches").  United's Round Rock location is a satellite to United's San Antonio branch, and employees of the Round Rock branch report directly to the branch manager in San Antonio.

3.      Upon information and belief, at all times relevant hereto and up to February 3, 2010, Kollar was a citizen of Texas and an employee of United.

4.      Jurisdiction over this matter arises under 28 U.S.C. § 1332 (diversity of citizenship) and 28 U.S.C. § 1367 (supplemental jurisdiction).    The amount in controversy exceeds $75,000, exclusive of interest and costs.

5.      Kollar contractually submitted to the exclusive jurisdiction of this Court when he agreed to the terms of his confidentiality and non-competition agreement ("Agreement") with United dated February 3, 2004.   The Agreement provides, in relevant part, the following:

> Consent to Personal Jurisdiction.  Employee hereby agrees that the interpretation and enforcement of the provisions of this Agreement shall be resolved and determined exclusively by the state court sitting in Fairfield County, Connecticut or the federal courts in the District of Connecticut and Employee hereby consents that such courts be granted exclusive jurisdiction for such purpose.

The claims contained herein arise, in part, out of the terms of the Agreement referenced above.

6.      Venue is proper in this Judicial District under 28 U.S.C. § 1391(a)(2) & (a)(3) because the intellectual property that is the subject of the action is derived from and/or maintained in this district and because Kollar contractually submitted to the exclusive jurisdiction of this Court when he agreed to the terms of the Agreement.

**General Allegations**

7.     At all relevant times up until February 3, 2010, Kollar was an employee of United.  During the course of his employment, Kollar served as an Outside Sales Representative for United.  Kollar reported to and/or performed services for the Texas Branches during his tenure at United.

8.     United's Texas Branches generates significant revenues from, among other things, the sale and rental of aerial and other equipment to its customers.  During his employment, Kollar contributed towards the revenues of the Texas Branches.

9.     As an Outside Sales Representative with United, Kollar further had controlled access to certain of United's trade secrets.  United's trade secrets include, but are not limited to, such things as: (1) gross rental data; (2) budget processes from market areas and rental projections; (3) marketing plans and strategies; (4) details of contracts; (5) actual and prospective customer data, including identities of United customers (i.e., United's customer list and customer contacts); (6) pricing and discount information; (7) cost information, including special programs and discount structures negotiated with particular equipment  vendors; (8) information on the sources and nature of financing United is able to secure for its customers; and (9) fleet information, including its make-up, cost and utilization.

10.     United's trade secrets and other confidential information are only shared with employees as necessary, and only to those who agree to keep it confidential.

11.     Much of United's confidential information is contained on United's RentalMan/WYNNE computer system and/or other customer relationship management tools, access to which is password protected and limited to authorized employees.

12.     None of the foregoing trade secrets discussed above was known or open to the public and United undertook reasonable measures to keep the trade secrets confidential and out of the public domain.

**Kollar's Agreement**

13.     In order to protect its customer goodwill, confidential information, and trade secrets, United requested that Kollar enter, and Kollar agreed to enter, into the Agreement.

14.     In this regard, Kollar agreed to sign the Agreement that contained a proscription against disclosing or improperly using United's confidential and/or secret information.

15.     Section 1 of the Agreement contains the following provisions, to which Kollar agreed, that outlines and defines "Confidential Information" as follows:

(f)     Confidential Information includes, but is not limited to:

(i)     business, pricing and management methods;

(ii)    finances, strategies, systems, research, surveys, plans, reports, recommendations and conclusions;

(iii)   names of, arrangements with, or other information relating to, the Company's customers, equipment suppliers, manufacturers, financiers, owners or operators, representatives and other persons who have business relationships with the Company or who are prospects for business relationships with the Company;

(iv)    technical information, work products and know-how;

(v)     cost, operating, and other management information systems, and other software and programming; and

(vi)    the name of any company or business, all or any substantial part of which is or at any time was a candidate for potential acquisition by the Company, together with all analyses and other information which the Company has generated, compiled or otherwise obtained with respect to such candidate, business

or potential acquisition, or with respect to the potential effect of such acquisition on the Company's business, assets, financial results or prospects.;

16.    Section 2 of the Agreement contains a restrictive covenant, which Kollar accepted that restricts Kollar from, among other things, competing directly or indirectly with United, within a limited Restricted Area, during his employment and 12 months thereafter.  Specifically, the Agreement provides:

(a)    During his . . . employment by the Company and for a period of 12 months immediately following the termination of his . . . employment for any reason whatsoever, whether or not for cause, Employee will not, directly or indirectly (whether through affiliates, relatives or otherwise):

(i)    in any Restricted Area (a "Restricted Area" is defined as the area within the city limits of San Antonio and [the city limits] of all Company locations in which Employee performed services for, or had management responsibilities for, at any time during the 24 month period preceding the termination of Employee's employment with the Company) be employed or retained by any person or entity who or which then competes with the Company to any extent, nor will Employee render to it any consulting, brokerage, contracting, financial or other services or any advice, assistance or other accommodation.

(ii)    solicit or accept the business of, or call upon, any person or entity who or which is or was (A) a customer, supplier, manufacturer, finder, broker, or other person who had a business relationship with the Company, or who was a prospect for a business relationship with the Company, at any time during the period of his . . . employment, or (B) an affiliate of any such person;

(iii)    approve, solicit or retain, or discuss the employment or retention (whether as an employee, consultant or otherwise) of any person who was an employee of the Company at any time during the 12 month period preceding the termination of Employee's employment

by the Company;

(iv)      solicit or encourage any person to leave the employ of the Company;

(vi)      own any interest in or be employed by or provide any services to any person or entity, which engages in any conduct which is prohibited to Employee under this Section[.]

**Breaches/Tortious Conduct of Kollar**

17.    On or about February 3, 2010, Kollar resigned his employment at United. At the time of his resignation, Kollar failed to advise United that he had secured employment within the same industry.

18.    United subsequently learned that Kollar was working at Ahern Rentals, Inc. ("Ahern"), a direct competitor of United located in Austin, Texas, among other places.

19.    Ahern holds itself out as the largest independently-owned rental business in the United States and one of the leading equipment rental companies in the Southwest.

20.    Upon information and belief, Kollar has now begun marketing and/or providing competitive products and/or services within the Restricted Area.   In this regard, upon information and belief, United has been made aware that Kollar has targeted United customers.

21.    Kollar has further made efforts to solicit current United employees to terminate their employment at United and commence working at Ahern.

22.     Kollar is performing these competitive services on behalf of Ahern, on whose behalf Kollar is operating within the Restricted Area and/or targeting United's customers and/or employees.  Kollar never provided United with written notice of his new position as required under his Agreement.

23.     Upon information and belief, in engaging in this activity, Kollar has used or inevitably will use the valuable confidential trade secrets of United and/or provide same to Ahern.  Indeed, United has information that Kollar has already begun visiting, contacting, and/or soliciting United's customers, and is engaging in such conduct within the Restricted Area.

24.     Kollar committed the acts alleged herein with knowledge that his conduct would harm the financial interest of United.

25.     Kollar committed the acts alleged herein for his own benefit and the benefit of Ahern.

**COUNT I – <u>Breach of the Agreement</u>**

26.     United realleges and reincorporates herein by reference the allegations set forth in Paragraphs 1 through 25 above as though fully set forth herein.

27.     United and Kollar exchanged valuable consideration in support of the Agreement.

28.     United duly performed all of its obligations pursuant to the Agreement.

29.     United is informed and believes that in his new position, Kollar has actively competed with United in soliciting United's customers, soliciting United employees, and/or competing within the Restricted Area, utilizing United's trade secrets and/or confidential information in conjunction with his efforts.

30.     Kollar's conduct within the Restricted Area and/or in soliciting United's customers and employees following his employment with United constitutes a material breach of the Agreement, including the restrictive covenants contained therein.

31.     Kollar's conduct set forth in the previous paragraph further constitutes a material breach of the implied covenant of good faith and fair dealing.

32.     Given his position as an Outside Sales Representative with United, Kollar was privy to confidential trade secrets, including, but not limited to, pricing, customer contacts and information, which he will inevitably disclose to and/or use on behalf of Ahern.

33.     Upon information and belief, after leaving United, and thereafter, in violation of the Agreement, Kollar provided Ahern with confidential and/or trade secrets and Kollar used said information in an effort to compete with United on behalf of Ahern.

34.     Kollar's conduct, all while using United's confidential trade secrets, is a material breach of the Agreement, including, but not limited to, the restrictive covenants.

35.     As a proximate result of Kollar's wrongful conduct, United has suffered and will continue to suffer irreparable harm and money damages.

36.     As a result of the foregoing activities, Kollar is liable to United for breach of contract.  United has suffered, and will continue to suffer, substantial and irreparable damages to its business and customer good will, as well as losses in an amount in excess of $75,000.00, but not yet fully ascertained, and which will be further determined according to proof.

37.     United has no adequate remedy at law for Kollar's willful breach of the Agreement and restrictive covenants set forth or incorporated therein, in that:   (i)

United's trade secrets are unique and valuable property that have no readily determinable market value; (ii) the Defendant's actions constitute interference with United's goodwill and customer relations; (iii) the Defendant's wrongful conduct and the damage resulting therefrom is continuing; and (iv) Defendant acknowledged in writing that a breach of the Agreement would constitute irreparable harm to United.

**COUNT II -   <u>Trade Secret Misappropriation in Violation of the Uniform Trade Secrets Act</u>**

38.     United realleges and reincorporates herein by reference the allegations contained in Paragraphs 1 through 37 above as though fully set forth herein.

39.     As an Outside Sales Representative for United, Kollar had access to United's trade secrets and confidential information, such as the following:

- United's confidential customer lists that are not readily ascertainable from public sources.  United spent considerable time, energy and money cultivating these customers.

- United's confidential financial information and cost and profit margins.  These figures are not available to the public and are held in confidence by United.

- United's cost information and discount information from certain vendors.  United has been able to negotiate special terms with vendors that are not readily ascertainable by competitors and are terms that are kept in confidence by United.

- United's fleet information, including its make-up, cost and utilization.  This information is not available to the public and is held in confidence by United.

- United's marketing plans and strategies, including United's potential satellite operations and other expansion plans.

40.     The aforementioned trade secrets are not known to all United employees, nor are they known to those working in the industry.  United's trade secrets were conveyed confidentially to Kollar, as necessary, in order to allow Kollar to fully carry out his job responsibilities on behalf of United.

41.     United took reasonable measures to keep the trade secrets confidential. As stated above, only certain employees had access to trade secrets.  Trade secret information was provided only to those who, like Kollar, agreed to keep such information confidential.   Indeed, United required Kollar to sign a confidentiality agreement protecting the integrity of this information.

42.     This information is highly valuable to United, and could enable United's competitors to challenge pricing and vendor relationships and/or steal private customer lists.

43.     United spent considerable sums of money acquiring, maintaining and guarding this information.

44.     Upon information and belief, Kollar misappropriated United's trade secrets when he began soliciting customers, using his knowledge of whom to contact, their product and service demands, and United's preferential pricing and terms.

45.     Upon information and belief, Kollar misappropriated United's trade secrets when he wrongfully used those trade secrets on his own behalf and on Ahern's behalf, and when he, on information and belief, provided same with his knowledge of those trade secrets.

46.     There is a substantial threat that Kollar will continue to use and disclose United's trade secrets in an effort to acquire United's customers for the benefit of his new employer and himself personally.

47.     Kollar willfully and maliciously misappropriated United's trade secrets, in that Kollar intended to solicit customers for the benefit of Ahern and his own personal financial interest, all to the detriment of United.

48.     Kollar's wrongful conduct is a violation of the Uniform Trade Secrets Act.

49.     As a direct and proximate result of Kollar's wrongful conduct, United has suffered and will continue to suffer irreparable damages and money damages.

50.     As a direct result of Kollar's willful conduct, United is entitled to punitive damages and attorneys' fees.

51.     Based on Kollar's unlawful acts as alleged herein, United is being irreparably harmed in that: (i) United's trade secrets are a unique and valuable property that have no readily determinable market value; (ii) the Defendant's actions constitute interference with United's goodwill and customer relations; (iii) the Defendant's wrongful conduct and the damage resulting therefrom, is continuing; and, (iv) the Defendant acknowledged, in writing, that a breach of the Agreement would constitute irreparable harm to United.

## COUNT III -- Tortious Interference With Prospective Economic Advantage and Existing Business Relationships

52.     United realleges and reincorporates herein by reference the allegations of Paragraphs 1 through 51 above as though fully set forth herein.

53.     This Count states a claim for relief against Kollar for tortious interference with United's prospective economic advantage and existing business relationships with United's customers.

54.     Economic relationships have existed between United and its customers and other entities, which have been advantageous to United.

55.     Being in the business of, among other things, renting and selling aerial and other equipment within Texas, United has developed valid and existing business

relationships with hundreds of customers with the probability of future economic benefit for United.

56.     United's Texas Branches historically generate significant revenues, which are a result of United's substantial time, effort, training and resources devoted to developing business relationships with its customers.

57.     As an Outside Sales Representative for United, Kollar was aware, and had knowledge of the existence of the relationships United enjoyed with its customers.

58.     Upon information and belief, in spite of this knowledge, Kollar wrongfully interfered with United's prospective economic advantage and existing business relationships by disclosing United's trade secrets and proprietary information to Ahern and soliciting customers, all in violation of the Agreement.

59.     Kollar engaged in these acts with full knowledge and/or recklessness and want of ordinary care in that such acts or omissions would necessarily interfere with or disrupt the economic relationships that United enjoyed with its customers, and these acts demonstrate Kollar's intentional or negligent conduct.

60.     Upon information and belief, Kollar directly interfered with the economic relationships United enjoyed with its customers.

61.     If not for the conduct of Kollar, United was reasonably certain to have entered into continued business relationships with its customers.

62.     Kollar's conduct was intentional and willful in that Kollar intended to harm United's economic and financial interest.

63.     Kollar's conduct was wrongful and not justified, privileged or excusable.

64.    As a direct and proximate result of Kollar's wrongful conduct, United has suffered and will continue to suffer irreparable harm, as well as monetary damages insufficient to fully remedy United.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff **UNITED** respectfully requests judgment in its favor and against Defendant **JAMES KOLLAR** as follows:

1.      That Defendant breached the Agreement with United and the restrictive covenants contained therein;

2.      That Defendant violated the Uniform Trade Secrets Act;

3.      That Defendant tortiously interfered with United's prospective economic advantage and existing business relationships;

4.      That the Court enter an Order, preliminary and permanently enjoining Defendant, **JAMES KOLLAR**, from violating the terms of the Agreement, from misappropriating, using, or disclosing United's trade secrets, and from tortiously interfering with United's business expectancies;

5.      That the Court award United compensatory damages arising out of Defendant's unlawful conduct alleged herein;

6.      That the Court award United punitive damages pursuant to the Uniform Trade Secret Act;

7.      That the Court award United its attorneys' fees pursuant to the Uniform Trade Secret Act;

8.      That the Court award United punitive/exemplary damages, attorneys' fees, expenses, interest, and costs, pursuant to the Agreement and/or common law; and

9.      That the Court grant United such additional relief as is just and proper, including, but not limited to the imposition of a constructive trust and disgorgement of all

compensation and other benefits which Defendant has derived or will derive as a result of his violation of the Agreement.

Dated this 1st day of March, 2010.

THE PLAINTIFFS
UNITED RENTALS, INC.

By: _____/s/_____
        Brian C. Roche – ct 17975
        Gerald C. Pia, Jr. – ct 21296
        Roche Pia, LLC
        Two Corporate Drive, Suite 248
        Shelton, CT 06484
        Phone: (203) 944-0235;
        Fax: (203) 567-8033
        E-mail: broche@rochepia.com
                gpia@rochepia.com